CHASEZ, Judge.
Mrs. Marie M. Molaison Rohli, the widow of a deputy criminal sheriff for the Parish of Orleans brought two suits seeking to recover the amount of the death indemnity provided by a group life insurance policy issued to the Louisiana Sheriffs’ Association.
The first suit claimed that her husband was covered by the group policy, and demanded the death indemnity itself from Crown Life Insurance Company, the issuer of the group policy.
The second suit, brought because Crown denied coverage by the policy, demanded the amount of the death indemnity from the City of New Orleans, the Criminal Sheriff for the Parish of Orleans, and the Louisiana Sheriffs’ Association, for their failure to afford coverage to her husband as al *243 legedly required by LSA-R.S. 33:1448-33:-1450. An exception of no cause of action by the Association was maintained and this court affirmed; thus the Association is no longer a defendant in these proceedings. Rohli v. City of New Orleans, 100 So.2d 301 (La.App.1958).
These two suits were consolidated for trial below and both suits were dismissed on the merits. The widow appeals on both suits and her appeals were consolidated for argument and both are treated in this opinion.
Crown issued its group life insurance policy to the Association at a time when LSA-R.S. 33:1448 provided coverage for all sheriffs and deputies except in the Parish of Orleans. When the statute was amended, effective August 1, 1954, to eliminate the Orleans Parish exclusion, the Criminal Sheriff for the Parish of Orleans made application for himself and his deputies for coverage to be effective August 1, 1954, but he did not include any premium payment with his application. Nevertheless, Crown’s normal routine resulted in the individual certificates for all criminal deputies being delivered to W. H. Dick & Co., who was both Crown’s general agent for Louisiana and the Association’s Administrator for the group policy. Dick never delivered the certificates of insurance to the Sheriff’s office because of the non-payment of premiums.
The statutory provision for premium payment is LSA-R.S. 33:1450. As amended in 1954, it stipulates payment “from the fund, or funds, provided or appropriated for payment of salaries” of the Sheriff and his deputies. The Criminal Sheriff for the Parish of Orleans has no fund or funds under his control for salaries of his deputies ; each deputy is paid separately and directly by the City of New Orleans. The Sheriff made several attempts to have the City provide funds for the premiums, but the City refused.
On September 17, 1954, the Sheriff drew a check on his “Federal Board Account” for one month’s premium and sent it to Dick & Co. The funds against which that check was drawn were surplus moneys from contract payments for boarding federal prisoners, and because the Sheriff’s comptroller believed the Sheriff had no authority to pay the premium the check was marked on its face “Paid under protest.” Because of that marking, Dick & Co., although it did deposit the check and kept a special accounting entry therefor on its own books, did not forward the proceeds to Crown.
The non-payment of premiums finally resulted on November 29, 1954, in a letter from the group insurer to Mr. Dick stating the Criminal Sheriff’s office “insurance * * * is officially cancelled retroactive to August 1, 1954,” the date on which the coverage was to have begun.
On May 10, 1955, the Criminal Sheriff was notified of this retroactive cancellation in writing. Of course, the Sheriff knew at all times that premiums for insurance were not being paid.
On July 27, 1955, the money Dick & Co., had been sent “under protest” by the Criminal Sheriff for one month’s premium was returned to the Sheriff, having been held at all times in Dick & Company’s account under the special accounting entry.
Meanwhile, on January 7, 1955, plaintiff’s husband died. After Crown’s refusal to pay plaintiff the death indemnity provided in the group policy of the Sheriff’s Association, these two suits resulted.
Reduced to its essentials, plaintiff’s position is that the Legislature required the insurance coverage for all sheriffs’ deputies; and Crown provided the required coverage, or, if it did not, due to non-payment of the premiums, then the parties responsible for that non-payment are responsible for their failure to procure the insurance.
Crown was clearly anxious to provide the coverage under its group policy which the Sheriffs’ Association procured in discharge of its statutory duty. But no one ever paid Crown to include the criminal deputies on that policy. If the Sheriff’s *244 check for one month’s premium, “paid under protest” because of doubt as to his authority to pay, were construed to include his deputies on the policy for one month, the policy would in any case no longer cover them after thirty-one days after the next month’s premium was due. In our opinion there was never any insurance coverage for plaintiff’s husband, because there was never any unequivocal payment of any premium; rather there was a constant refusal to pay for the insurance. The suit against Crown was therefore properly dismissed.
The suit against the City of New Orleans and the Criminal Sheriff for the Parish of Orleans was also properly dismissed.
LSA-R.S. 33:1450, as amended in 1954, reads:
“The cost of the group insurance shall be paid by the sheriff out of the Sheriff’s Salary Fund, except that the cost of the insurance on the criminal sheriff for the parish of Orleans and his deputies and the civil sheriff for the parish of Orleans and his deputies shall be paid from the fund, or funds, provided or appropriated for payment of the salaries of said civil and criminal sheriffs, and their respective deputies.”
In Orleans Parish the Criminal Sheriff has no salary fund and he has no control over the funds appropriated by the City for the payment of his deputies’ salaries; and he therefore could not have been, and by the statute was not, required personally to pay the premiums. The most favorable construction we could give plaintiff might require the Criminal Sheriff to attempt to procure payment of the premiums by the City; and this attempt he did make.
In respect to plaintiff’s claim against the City, the most favorable interpretation of the statute would impose a duty on the City to provide funds for the premiums. But this the statute cannot do without the City’s consent, because LSA-Const. Art. XIV, Sec. 22, par. 4 requires the City’s consent to any increase in the amount the City must appropriate and pay for the expenses, including salaries and maintenance, of parochial officers and their deputies. The City not having consented to any increase, it was under no obligation to provide additional funds for insurance premiums for the office of the Criminal Sheriff of the Parish of Orleans.
Accordingly, the judgment of the district court in favor of defendant, Crown Life Insurance Company, and against plaintiff, Mrs. Marie M. Molaison Rohli, is therefore affirmed.
Affirmed.